# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED

JUL 09 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.  **19MJ2853**
Apple iPhone 6s Cellphone, IMEI: 353339075261342, )
FPF No. 2019250600060601 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A

located in the      Southern      District of      California     , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952, 960 | Importation of a Controlled Substance; |
| 21 U.S.C. § 963 | Conspiracy to Import a Controlled Substance |

The application is based on these facts:

SEE AFFIDAVIT

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Ryan Morse, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/8/19

*Judge's signature*

City and state: San Diego, CA     Honorable William V. Gallo, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The following property is to be searched:

>Apple iPhone 6s Cellphone
>IMEI: 353339075261342
>
>FPF No. 2019250600060601
>**(Target Device)**;

The **Target Device** is currently in the possession of the Department of Homeland Security at the U.S. Customs and Border Protection Permanent Vault at 9495 Customhouse Plaza in San Diego, CA, 92154.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of December 23, 2018 to March 22, 2019:

a. tending to indicate efforts to import methamphetamine or some other federally controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine or some other federally controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine or some other federally controlled substances from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine or some other federally controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963, importation of a controlled substance and conspiracy to do same.**

## AFFIDAVIT

I, Ryan Morse, Special Agent with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), being duly sworn, hereby state as follows:

## INTRODUCTION

1. This affidavit supports an application for a warrant to search the following electronic device, as further described in Attachment A:

    a.    Apple iPhone 6s Cellphone
            IMEI: 353339075261342

            FPF No. 2019250600060601
            (**Target Device**);

and seize evidence of crimes, specifically, violations of Title 21, United States Code, Section(s) 952, 960, and 963, as more particularly described in Attachment B. This search supports an investigation and prosecution of JOSE ROSALES for the crimes mentioned above. A factual explanation supporting probable cause follows.

2. The **Target Device** was seized from ROSALES on March 21, 2019 at the time of his arrest at the Otay Mesa, California Port of Entry ("POE"), as he attempted to smuggle methamphetamine into the United States. The **Target Device** is currently in the possession of the Department of Homeland Security. The **Target Device** is currently being held securely at the U.S. Customs and Border Protection Permanent Vault at 9495 Customhouse Plaza in San Diego, CA, 92154.

3. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, there is probable cause to believe that a search of the **Target Device** will produce evidence of one or more of the aforementioned crimes, as described in Attachment B.

4. The information contained in this affidavit is based upon my experience and training, and consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews

1

and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause for the requested warrant.

## EXPERIENCE AND TRAINING

5.   I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. I am also a federal law enforcement officer within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure. I am authorized under Rule 41(a) to make applications for search and seizure warrants and to serve arrest warrants. I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

6.   I am a Special Agent (SA) with ICE-HSI and have been so employed since October 2016, having graduated from the Criminal Investigator Training Program at the Federal Law Enforcement Training Center (FLETC) located in Glynco, Georgia in March of 2017 and the Homeland Security Investigations Special Agent Training Program in July of 2017.

7.   The combined Academy curriculums covers specialized training in the Immigration and Naturalization Act, criminal investigations, criminal law, and statutory authority, as well as cross-training in Title 21 United States Code, controlled substances violations, and in Title 19 United States Code, customs law violations. Prior to my employment with HSI, I was employed as a full-time, sworn federal agent with the Federal Air Marshal Service for approximately 5 years and 7 months. In 2011, I graduated from the Federal Air Marshal Training Program at the FLETC located in Artesia, New Mexico as well as the Federal Air Marshal Training Program advanced training at the Transportation

2

Security Administration Training Center in Atlantic City, New Jersey. I have a Master's Degree in National Security from the University of New Haven.

8. I am currently working in a financial investigations group; however, I was previously assigned to Contraband Smuggling Group 3 (CS3) for approximately 1 year and 10 months. CS3 is primarily tasked with investigating, arresting, and prosecuting narcotics smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor as well as other offenses that occur at the Ports of Entry in San Diego County including assaults on federal officers, escapes from federal custody, and a variety of other federal offenses. CS3 agents deploy in plain clothes attire and drive department unmarked vehicles.

9. I have personally participated in and conducted investigations of violations of various State and Federal criminal laws, including those related to narcotics violations. I have arrested or participated in the arrest of persons for violations of the Controlled Substances Act. In these cases, I have conducted interviews with the arrested persons and their associates. I have conducted surveillance of narcotics smugglers as they conduct their smuggling activity while crossing the border from Mexico into the United States. Through these investigative activities, I have gained a working knowledge and insight into the typical activity of narcotics smugglers, and the structure of their narcotics smuggling networks.

10. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug traffickers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b. Drug traffickers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    c. Drug traffickers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal

3

cargo will arrive at predetermined locations.

  d. Drug traffickers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

  e. Drug traffickers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

  f. Drug traffickers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

  g. The use of cellular telephones by conspirators or drug traffickers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, videos, call logs, address book entries, IP addresses, social network data, and location data.

  11. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

  a. tending to indicate efforts to import methamphetamine or some other federally controlled substances from Mexico into the United States;

  b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to

4

      facilitate the importation of methamphetamine or some other federally controlled substances from Mexico into the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine or some other federally controlled substances from Mexico into the United States;

    d.    tending to identify travel to or presence at locations involved in the importation of methamphetamine or some other federally controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the **Target Device(s)**; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

12. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Some of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

13. Based upon my experience investigating drug smuggling, my training, and my consultation with other investigators who have experience investigating drug smuggling in near the border, I understand that drug smugglers often seek to smuggle drugs from Mexico to the United States by hiding the drugs in hidden compartments of cars, and in non-factory compartments (*i.e.*, compartments that the manufacturer did not design for ordinary use). Smugglers often then drive north from Mexico and seek to pass through POEs with the drugs undetected. (I am also aware that such individuals will sometimes try to generate a history of crossings to show that driving through a POE is ordinary behavior for them.) When they arrive in the United States, smugglers

5

often take the drugs to a discreet location to transfer them to other people involved in the distribution chain, who can then send the drugs to other locations for downstream distribution.

14. Furthermore, based on my training and experience, and conversations with other law enforcement officers who investigate drug smuggling and trafficking, I know that drug conspiracies often require detailed and intricate planning to successfully evade detection. Consequently, drug conspiracies often involve planning and coordination for several months, andthis planning often occurs through mobile telephones. Additionally, based on my training and experience, and conversations with other law enforcement officers who investigate drug smuggling and trafficking, I know that coconspirators are sometimes unaware when a fellow coconspirator has been arrested and will attempt to communicate with that coconspirator via mobile telephone after his or her arrest to determine the whereabouts of drugs that are being transported.

## FACTS SUPPORTING PROBABLE CAUSE

15. According to a report prepared by CBP Canine Enforcement Officer Pittman, on March 21, 2019, he and his Narcotics and Human Detection Dog, "Tammy," were roving in pre-primary inspection at the Otay Mesa POE when they encountered a White Toyota Highlander with California license plate 8FPA647 (the "Vehicle"). Tammy alerted to the back undercarriage of the vehicle.

16. According to a report prepared by CBP Officer Ibarra, at approximately 5:51 p.m. on the same day, he was working at the Otay Mesa POE and was informed by Officer Pittman that Tammy had alerted to the Vehicle. Officer Ibarra approached the Vehicle and obtained two negative customs declarations from ROSALES. ROSALES stated that he owned the Vehicle. The Vehicle was driven to the secondary lot, where Officers Pittman and Ibarra continued to inspect it. During this inspection, they noticed that bolts holding one of the seats had been tampered with, at which point Officer Pittman drilled a hole in the floor of the Vehicle, and Officer Ibarra noticed what appeared to be narcotics packages in the floor.

17. According to a report prepared by CBP Officer Norman, she received the Vehicle for seizure processing in the secondary lot of Otay Mesa. She and a mechanic removed the rear tires and saw access panels in each tire well. After opening the panels, Officer Norman removed some packages from each side, but the remainder were stuck in the compartment. The mechanic then gained access to the compartment from the top by removing the third row seat and cutting open the top of the compartment, thus revealing a layer of black carbon fiber and packages underneath it. Officer Norman recovered a total of 38 packages from the Vehicle, each double-bagged in vacuum-sealed freezer bags. Officer Norman tested the substance contained within one of those packages, which tested positive for the properties of methamphetamine. A chemical analysis report confirmed the substance within the packages was methamphetamine with 99% purity and a total weight of approximately 17.86 kilograms.

18. I was notified of the event, responded to the Otay Mesa POE, and subsequently placed ROSALES under arrest. I further seized the Vehicle, the methamphetamine packages, and the **Target Device**, which had been previously seized from ROSALES.

19. I advised ROSALES of his Miranda rights. ROSALES waived his rights, and I subsequently conducted a recorded interview of ROSALES. During the post-Miranda interview, ROSALES denied knowledge of controlled substances in the Vehicle, and said that he had purchased his car in January from a buyer he met through Craigslist for $16,000. He further stated that he is the only one with keys to the car and does not have a spare. Rosales said he traveled to Tijuana earlier on March 21, 2019 (the date of his arrest), went to a club in Tijuana, ate, and was headed back to his home in Quail Valley, California when he was arrested. He indicated the Vehicle had been parked in a paid lot at a market near the club. He considered the lot safe.

20. I have reviewed the crossing history in the TECS system for the vehicle ROSALES was driving when he was arrested and determined that ROSALES began crossing the Vehicle regularly into the United States (sometimes more than once per

week) since at least February 8, 2019. The records also indicate the Vehicle entered Mexico at about 11:04 a.m. on March 18, 2019. Rosales walked back into the United States from Mexico early in the morning on March 19, 2019. The next crossing record for the Vehicle was the day of Rosales's arrest, March 21, 2019, when he tried to re-enter the U.S. from Mexico. In his post-arrest statement, Rosales did not say or indicate that the Vehicle had been in Mexico since March 18 as the TECS records indicated.

21. Contents of the **Target Device** were extracted at the POE using the Cellebrite application, and a report was generated. I reviewed the report. I ask the Court not to rely on anything found or not found in that review in determining if there exists probable cause to search the **Target Device**. The purpose of the requested warrant is to have the **Target Device** more thoroughly examined by a trained specialist in cell phone examinations and attempt to extract data from applications that was unable to be extracted with the initial download. The specialist is more knowledgeable about how and where data is stored in cell phones, how to find and extract that data, and its significance.

22. Given the facts surrounding ROSALES's arrest, and based upon my experience and training, as well as consultation with other law enforcement officers experienced in drug smuggling investigations, I submit that there is probable cause to believe that information relevant to the smuggling activities of ROSALES will be found in the **Target Device**.

23. For the reasons set forth above, I request permission to search the **Target Device** for items listed in Attachment B for the time period from December 23, 2018 up to and including March 22, 2019, which was the day following ROSALES's arrest. ROSALES is currently charged in an information, and his case is pending trial in August 2019.

**METHODOLOGY**

24. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and/or serial number, the nature and types of services to which

8

the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

25. Following the issuance of this warrant, I will collect the subject cellular/mobile telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

26. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel

conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this Court.

## CONCLUSION

27. Based on all of the facts and circumstances described above, there is probable cause to conclude that JOSE ROSALES used the **Target Device** to facilitate violations of Title 21, United States Code, Section(s) 952, 960, and 963.

28. Because the **Target Device** was promptly seized during the investigation of JOSE ROSALES's trafficking activities and has been securely stored since that time, there is probable cause to believe that evidence of illegal activities committed by JOSE ROSALES continues to exist on the **Target Device**. As stated above, I believe that the date range for this search is from December 23, 2018 to March 22, 2019.

29. WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachment A, and to seize items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Ryan Morse
Special Agent
Homeland Security Investigations
Department of Homeland Security

Subscribed and sworn to before me this ___8___ day of July, 2019.

_____
The Honorable William V. Gallo
United States Magistrate Judge